IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HERBERT JOHN MILLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:17-cv-00847-O |
| § | |
| SS HOSPITALITY GROUP, LLC, d/b/a § | |
| LANDMARK BAR AND KITCHEN, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Charles Rogers's Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Stay Discovery (ECF No. 23), filed March 28, 2018, and Plaintiff's Response to Defendant Charles Rogers's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 27), filed April 18, 2018. United States District Judge Reed O'Connor referred this motion to the undersigned for determination or recommendation by Order entered May 1, 2018. ECF No. 29. After consideration of the pleadings and the applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant Charles Rogers's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 23) and **DISMISS** the claims as to Defendant Charles Rogers **with prejudice**. The undersigned further recommends that Judge O'Connor **DENY as moot** Defendant Charles Rogers's Motion to Stay Discovery (ECF No. 23 at 15–19).

### BACKGROUND

Plaintiff Herbert John Miller ("Miller") brings this action against defendants SS Hospitality Group, LLC d/b/a Landmark Bar and Kitchen ("Landmark Bar"), Shaul Sultan ("Sultan"), Saman

Samenifallah ("Samenifallah"), Charles Rogers ("Rogers"), Matthew Pearce ("Pearce"), and Charlie Owens ("Owens"), under 42 U.S.C. § 1983. ECF No. 22. Miller's specific claims are for excessive force, false imprisonment, assault, intentional infliction of emotional distress, malicious prosecution, premises liability, negligence, negligent hiring, and gross negligence. *Id.* at 10–20.

Sultan is the Manager and Director of Landmark Bar. ECF No. 22 at 2. Samenifallah is the Manager of Landmark Bar. *Id.* Rogers, Owens, and Pearce (collectively, the "Police Defendants") are all police officers with the City of Fort Worth. *Id.* at 3. Rogers and Owens were also working off-duty for Landmark Bar at the time of the complained-of incident. *Id.* at 3–4, 10.

The following facts are taken from Miller's Second Amended Complaint. On November 22, 2015, Miller entered Landmark Bar and Kitchen in Fort Worth, Texas. *Id.* at 3. According to Miller, he allegedly coughed a sip of his drink in the direction of Rogers and another person at Landmark. *Id.* at 4. Rogers was one of Landmark's security personnel as well as an off-duty police officer of the City of Fort Worth. *Id.* Miller immediately apologized to Rogers. *Id.* According to Miller's complaint, he denies having bloodshot watery eyes and slurred speech, being unsteady, and taking any aggressive stance toward Rogers, as the police report states. *Id.* at 9, 26–27.

Rogers allegedly responded, "Get the f*ck out of my face!" *Id.* at 4. Rogers appeared to become upset and began to walk toward Miller. *Id.* A female employee of Landmark prevented Rogers from "getting into Miller's face." *Id.* Rogers then ordered Miller to leave Landmark's premises. *Id.* Miller left the immediate vicinity but remained in the bar to gather his friends. *Id.* While waiting for his friends, Miller attempted to apologize to Rogers again. *Id.* However, during Miller's apology, Owens came from Miller's side and shoved Miller in his torso. *Id.* The shove caused Miller to stumble backwards. *Id.*

Owens began to escort Miller out of the bar. *Id.* Owens allegedly pushed Miller down the steps, causing Miller to land face down. *Id.* According to Miller, he was not resisting Owens in any way. *Id.* While Miller was on the ground, Rogers allegedly struck Miller several times in his ribs and right side. *Id.* Miller was escorted to Pearce's waiting police vehicle. *Id.* at 4–5. At this time, Rogers was on Miller's right side. *Id.* Rogers caused injury to Miller underneath his right armpit in some way. *Id.* at 5.

One of the Police Defendants directed Miller to sit down. *Id.* at 8. As Miller was in the process of sitting down, Rogers allegedly shoved or slammed Miller onto the ground. *Id.* According to Miller, he felt his back pop. *Id.* Miller informed the Police Defendants that he had bad knees. *Id.* Owens allegedly responded, "I don't give a sh*t!" *Id.* Owens handcuffed Miller. *Id.* Either Owens or Rogers held Miller down on the ground with a knee. *Id.*

According to Miller, Rogers was verbally abusive and asked whether Miller had any warrants or was carrying a gun. *Id.* Owens frisked Miller twice during this period. *Id.* Owens then placed Miller in the back of the waiting police vehicle. *Id.* Owens allegedly pushed the handcuffs too closely together and caused Miller pain. *Id.* Miller told Owens his handcuffs were too tight. *Id.*

Pearce then transported Miller away from the location. *Id.* Miller told Pearce that his handcuffs were too tight and he could not feel his hands. *Id.* When Miller arrived at jail, he allegedly could not feel his hands as they were turning blue. *Id.* at 8–9. Miller still complains of problems with his wrists due to this incident. *Id.* at 9.

Miller was placed under arrest for public intoxication by Rogers and Pearce. *Id.* While Owens is not listed on the police report, Owens states that he was involved in the arrest in an interoffice memo dated December 4, 2015. *Id.* at 9, 24. Rogers and Pearce placed Miller under arrest for public intoxication and issued him a citation. *Id.* at 9. No field sobriety test, breathalyzer,

3

or blood test was conducted on Miller. *Id.* at 10. Miller appeared at his scheduled court appearance for the citation on February 15, 2016, where he learned that his charge had been dismissed on January 25, 2016. *Id.* at 9. Miller reported the alleged misconduct to the Fort Worth Police Department. *Id.* at 10.

Miller alleges that he experienced a high level of shock and distress from Rogers and Owens's conduct. *Id.* at 9. He additionally alleges that he suffered medical injuries including "scratches, bruises, back problems, mental anguish, and embarrassment." *Id.* at 10. He estimates that he has sustained over $24,000 in medical expenses from the incident. *Id.*

Miller filed his Second Amended Complaint on March 26, 2018. ECF No. 22. He attached the following to his complaint as exhibits: an interoffice memo written by Owens, a copy of the police report for the incident completed by Pearce, Miller's citation for public intoxication, a copy of the police report for Miller's complaint regarding the incident, police body camera footage of Miller's complaint the next day, the order dismissing the citation, internet reviews of Landmark Bar, and police dash camera video footage of Miller's arrest. *Id.* Rogers filed a Motion to Dismiss on March 28, 2018. ECF No. 23. Miller filed a Response on April 18, 2018. ECF No. 27. Rogers did not file a Reply.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in

the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). If "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). "When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents." *Kamps v. Baylor Univ.*, 592 Fed. App'x 282, 284 n.1 (5th Cir. 2014).

## ANALYSIS

In his Motion to Dismiss, Rogers argues that he has qualified immunity on Miller's claims of excessive force, false arrest, and malicious prosecution. Rogers also argues that Miller's state-law claims should be dismissed under the Texas Tort Claims Act and under official immunity.

**I.  Rogers has qualified immunity, and dismissal is required, for all the complained-of actions under 42 U.S.C. § 1983.**

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established

5

statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741.

If a police officer is performing a public duty, such as the enforcement of general laws, then the officer is acting as a public officer rather than the agent of the employer. *Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 939 (N.D. Tex. 2010) (McBryde, J.) (citing *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.)); *see also Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 419 (Tex. App.—Dallas 2007, pet. denied) ("Because an off-duty police officer's public duty can also be triggered by 'reasonable suspicion' that a person is, has been, or soon will be engaged in criminal activity, the officer need not

personally witness a crime to be acting within his official capacity."); *Ali v. La Marque I.S.D. Educ. Found., Inc.*, CIV.A. H-05-2508, 2007 WL 4206326, at *6 (S.D. Tex. Nov. 27, 2007) (granting qualified immunity to an off-duty police officer working as a security guard who detained a suspected criminal).

Miller's complaint clearly shows that the Rogers was acting as an on-duty police officer when all the complained-of actions took place. Two of Miller's claims, false imprisonment and malicious prosecution, in and of themselves require that Rogers was acting as an on-duty officer in arresting and prosecuting him. In addition, Miller's claim against Rogers for excessive force under 42 U.S.C. § 1983 presumes that Rogers was acting under color of law, that is, as an on-duty police official. The facts alleged in Miller's complaint show that the complained-of conduct occurred in the course of Rogers's arrest of Miller for public intoxication. ECF No. 22 at 3–10. Though Miller disputes at points that Rogers had probable cause to arrest him, Miller does not dispute that Rogers was engaged in making an arrest. *See id.* at 11, 15–16. Because Rogers was an on-duty police officer, qualified immunity may apply to his actions.

**A.     Rogers has qualified immunity for excessive force.**

To prevail on a Fourth Amendment excessive-force claim under 42 U.S.C. § 1983, the plaintiff must establish "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). "Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case,'" including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to

evade arrest by flight. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Miller alleges that Rogers struck Miller several times as Miller lay face down on the ground without resisting, after Owens pushed Miller down a set of steps. ECF No. 22 at 4. Miller also alleges that Rogers shoved or slammed Miller to the ground. *Id.* at 8. Miller alleges that, as a result of this force, he experienced a high level of shock and distress and suffered medical injuries including "scratches, bruises, back problems, mental anguish, and embarrassment," all of which resulted in over $24,000 in medical expenses. *Id.* at 9–10. He also included in his complaint photos that show a red mark under and near his right armpit, as well as a small bruise on top of his right shoulder. *Id.* at 5–7.

The exhibits Miller attached to his complaint tell a different story. Both Owens's interoffice memo and Pearce's police report state that Miller showed signs of intoxication, including bloodshot watery eyes, slurred speech, and unsteadiness. *Id.* at 24, 25–26. According to Owens's memo, Miller repeatedly approached Rogers in a threatening manner before Owens escorted Miller out of the bar to complete the arrest. *Id.* at 24. Owens states that Miller ignored orders to keep moving. *Id.* At one point, Miller swung an arm at Owens, causing Owens to believe Miller might assault Owens because Miller had already spit on Rogers, which is why Owens pushed Miller. *Id.* According to Owens, Miller fell into a seated position rather than face down. *Id.* Neither the memo nor the police report confirm or deny whether Rogers struck Miller or slammed him to the ground. *See id.* at 24, 25–26.

Miller alleges in his complaint that the police reports and memo are fraudulent, and he denies having bloodshot watery eyes and slurred speech, being unsteady, or taking any aggressive

stance toward Rogers. *Id.* at 9. However, in the context of a motion to dismiss, exhibits attached to a complaint control over allegations in a complaint, and the Court is not required to accept the plaintiff's interpretation of those exhibits. *Riley*, 355 F.3d at 377 (5th Cir. 2004); *Kamps*, 592 Fed. App'x at 284 n.1. This Court has previously accepted the contents of an attached police investigative report as controlling over a plaintiff's allegations. *Trevino v. City of Fort Worth*, No. 4:17-CV-227-A, 2017 WL 3704511, at *5 (N.D. Tex. Aug. 25, 2017) (McBryde, J.). Thus, to the extent that the Miller's exhibits contradict his allegations, the exhibits that he himself attached to his complaint control.

On the first element of an excessive force claim, Miller has alleged injury. His photos show only *de minimis* injuries. ECF No. 22 at 5–7; *see also Montes v. Ransom*, 219 Fed. App'x 378, 380 (5th Cir. 2007) (finding that plaintiff's submitted photographs showed only *de minimis* injuries as they revealed nothing "other than minor red marks and perhaps a small amount of swelling"). However, he has also alleged back problems from Rogers slamming Miller to the ground, and Miller states that this and his other conditions have resulted in $24,000 in medical damages. ECF No. 22 at 8–10. Nothing in the attached exhibits contradict Miller's allegations of injury. *See id.* at 24–27.

On the second element, that the injury resulted directly and only from a use of force that was clearly excessive, Miller states, among other allegations, that Rogers slammed Miller to the ground and Miller felt his back pop. ECF No. 22 at 8. The attached exhibits neither confirm nor deny that Rogers did so. *See id.* at 24–27. Miller also alleges back problems from this use of force. *Id.* at 9–10. Miller has thus established causation for his injury.

Miller has not, however, established that the force used in this case was excessive. Of the Supreme Court's three factors set out in *Graham*—the severity of the crime, whether the suspect

9

posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest—only one weighs in favor of Miller. 490 U.S. at 396. As to the first factor, his crime of public intoxication is a Class C misdemeanor and is only a minor offense militating against the use of force. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (citing *Reyes v. Bridgwater*, 362 Fed. App'x 403, 407 n.5 (5th Cir. 2010)).

As related to the second and third factors, the exhibits show that Miller posed an immediate threat to the officers' safety and that Miller actively resisted arrest. Both Miller's allegations and the attached exhibits agree that Miller spat or coughed his drink on Rogers. ECF No. 22 at 4, 24–27. Rogers and Owens believed this action constituted assault. *Id.* at 24–27. While Miller alleges that he was not intoxicated, attempted to apologize to Rogers, and never resisted arrest, the exhibits Miller attached contradict his allegations. *Id*. According to Owens's memo and Pearce's report, Miller showed multiple signs of intoxication, took an aggressive stance toward Rogers, resisted Owens's escorting Miller out of the bar, and swung his arm at Owens. *Id.* at 24–27. Exhibits control over allegations. *Riley*, 355 F.3d at 377 (5th Cir. 2004). The exhibits that Miller attached clearly state the need for such a use of force, and they do not show that such force was excessive or clearly unreasonable.

Because, according to Miller's own complaint, Rogers did not use excessive force, Rogers is entitled to qualified immunity on Miller's claims, and Miller's excessive force claim should be dismissed.

**B.    Rogers has qualified immunity for Miller's claim of unlawful or false arrest.**

There is a clearly established Fourth Amendment right to be free from false arrest, which is to say, arrest without probable cause. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). "Even law enforcement officials who reasonably but mistakenly conclude that probable

cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "Thus, plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro*, 568 F.3d at 207.

Rogers argues that he was not the arresting officer, according to Owen's memo and Pearce's police report. ECF No. 23 at 12–13. However, Pearce's police report does in fact list Rogers as the second member of the arrest. ECF No. 22 at 26. Neither exhibit states that only one officer made the arrest, and multiple officers may participate in an arrest. Indeed, as Rogers argues in a different section of his Motion and as the undersigned previously found, Rogers was acting as a police officer engaged in his public duty in enforcing the law via Miller's arrest. *See supra* Part I. Finally, Miller alleges that Rogers arrested him, and courts take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. ECF No. 22 at 9; *Yumilicious Franchise*, 819 F.3d at 174. According to the factual basis pleaded in the Complaint, Rogers did arrest Miller.

However, Rogers cannot be liable for false arrest and malicious prosecution because, according to the exhibits Miller attached to his complaint, Rogers and the other police officers had probable cause to arrest Miller for public intoxication. Under Texas Penal Code § 49.02(a), a person commits the offense of public intoxication "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." As stated in the previous section, Owens's memo and Pearce's police report state that Miller showed signs of intoxication, including bloodshot watery eyes, slurred speech, and unsteadiness. *Id.* at 24, 25–26. The exhibits also show that Miller was a danger, as he spat or coughed his drink on Rogers, approached Rogers aggressively, resisted arrest, and swung his arm at Owens. *Id.* These attached exhibits control over Miller's allegations. *Riley*, 355 F.3d at 377 (5th Cir. 2004). According to the

Complaint, Rogers had probable cause to arrest Miller, and as such Rogers did not unlawfully arrest Miller.

Miller additionally argues, based on the Supreme Court's opinion *␣Whren v. United States*, that some seizures based on probable cause can nevertheless be unreasonable. 517 U.S. 806, 818 (1996). *Whren* holds that such searches or seizures can be unreasonable if conducted in an "extraordinary manner," such as deadly force, unannounced or warrantless entry into a home, or physical penetration of the body. *Id.* Miller's allegations of some physical force do not rise to such a level. As there was probable cause for his arrest, based on the exhibits attached to his own complaint, Miller has not overcome Rogers's qualified immunity for false arrest and malicious prosecution.

### C. A standalone claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983.

Malicious prosecution, standing alone, is not a violation of the United States Constitution, and to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). "[C]ausing charges to be filed without probable cause will not without more violate the Constitution." *Id.* at 953. A claim of malicious prosecution against a police officer for maliciously charging a person with a crime is not a viable § 1983 claim. *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 740–41 (N.D. Tex. 2017) (Lindsay, J.).

Miller's malicious prosecution claim is based solely on Rogers's alleged lack of probable cause in maliciously charging Miller with public intoxication. ECF No. 22 at 15–16. Such a claim is not cognizable under 42 U.S.C. § 1983. Miller's complaint is not clear regarding whether he brings this claim under federal or state law, though all his claims are grouped under the heading "Causes of Action Under 42 U.S.C. § 1983." ECF No. 22 at 10. Insofar as Miller brings his

malicious prosecution claim under 42 U.S.C. § 1983, this claim should be dismissed.

## II. Miller's claims brought under state law should be dismissed under the Texas Tort Claims Act.

The Texas Tort Claims Act requires that:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). "Under Texas law, '[b]ecause the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.'" *Curley v. Gonzalez*, No. 3:15-CV-1341-L, 2017 WL 4351073, at *5 (N.D. Tex. Sept. 30, 2017) (Lindsay, J.) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W. 3d 653, 659 (Tex. 2008)). If a plaintiff brings a lawsuit against a police officer for conduct within the scope of the officer's duties, the suit should instead be brought against the city employing that officer. *Id.* at *6. State claims brought in federal court in such a manner should be dismissed pursuant to Section 101.106(f) of the Texas Tort Claims Act. *Id.* The thirty-day deadline operates in federal as well as state court. *Graham*, 288 F. Supp. 3d at 747.

As the undersigned has already determined, Rogers was acting in the scope of his official duties during the complained-of incident. *See supra* Part I. Rogers first requested dismissal under Section 101.106(f) on December 8, 2017, in a motion to dismiss Miller's first amended complaint. ECF No. 11 at 9–10. Rogers renewed his request in the instant Motion, filed on March 28, 2018. ECF No. 23 at 13–14. Miller has not amended his pleadings to dismiss Rogers and name the City

of Fort Worth in the statutorily prescribed thirty-day period, nor has Miller given any answer to this argument in his Response. Miller's state tort claims should be dismissed.

Because this ground disposes of all of Miller's state claims, and the undersigned previously found in Part I of this opinion that all of Miller's federal claims should be dismissed, the undersigned recommends that Miller's claims against Rogers should be dismissed in their entirety.

### III.   Miller's claims brought under state law should be dismissed under official immunity.

In Texas, "[o]fficial immunity 'is an affirmative defense'; it protects government employees 'from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority.'" *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). "Texas' law of qualified or official immunity is substantially the same as federal immunity law." *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir. 1996). The one important difference is that Texas immunity law does not consider whether the right was clearly established, and instead focuses solely on the objective legal reasonableness of the officer's conduct. *Id.* at 808–09.

Rogers argues that Miller's state-law claims be dismissed for the same reason that his federal claims should be dismissed: Rogers acted in good faith, meaning he acted in an objectively reasonable manner. ECF No. 23 at 14–15. However, he does not specifically argue for the dismissal of any of Miller's state-law claims under this ground or argue his good faith as to any specific claim. *See id.* Certainly, to the extent that this Court has recommended dismissal of Miller's claims under qualified immunity, these claims should be dismissed. *See supra* Part I. As Rogers has not specifically identified any state-law claims that must be dismissed on this ground, however, the undersigned finds that he cannot recommend dismissal of any claims on this ground.

**IV.     As Miller has no viable avenue of recovery on his claims, his complaint should be dismissed with prejudice against Rogers.**

While the court should dismiss a complaint without prejudice in most cases, a plaintiff must have some viable avenue to recover according to which the plaintiff could amend the complaint. *See Parker v. Allstate Ins. Co.*, Civ. A. No. 3:16-CV-00892-CWR-FKB, 2017 WL 4287912, at *1 (S.D. Miss. Sept. 27, 2017) ("It is well-established that plaintiffs who fail to meet their burden on a motion for judgment on the pleadings and yet may still have a viable avenue to recover should be granted leave to amend their complaint and make their best case." (citation omitted)). Because Rogers has qualified immunity on his federal claims and the Texas Tort Claims Act is an absolute bar to recovery on his state claims, Miller has no viable avenue of recovery against Rogers. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 642, 647–48 (N.D. Tex. 2007) (Lynn, C.J.) (accepting magistrate judge's recommendations and dismissing with prejudice claims that were defective because of judicial, official, and qualified immunity). Miller has now amended his complaint twice and responded to six motions to dismiss, but he has not cured the defects in his pleading. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (affirming dismissal with prejudice where plaintiff had pleaded his best case). Because further amendment would be futile, his complaint should be dismissed with prejudice as to Rogers.

**V.     Rogers's motion to stay all discovery should be denied as moot.**

Rogers includes in his Motion to Dismiss a Motion to Stay Discovery. ECF No. 23 at 15–19. Rogers requests that discovery be stayed because Rogers has asserted qualified immunity, citing Supreme Court and Fifth Circuit precedent that requires discovery to be stayed while qualified immunity is pending or after it has been granted. *Id.* at 16 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 333 (5th Cir. 1986)). This argument is well-taken. However, the requested

stay is rendered moot by the undersigned's recommendation of dismissal of all claims against Rogers under qualified immunity, because after such dismissal Miller can no longer request discovery as Rogers will be terminated from the suit. The undersigned therefore recommends that Rogers's motion to stay all discovery be denied as moot.

## CONCLUSION

After consideration of the pleadings and the applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant Charles Rogers's Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Stay Discovery (ECF No. 23) and **DISMISS** the claims against Defendant Charles Rogers **with prejudice**. The undersigned further recommends that Judge O'Connor **DENY as moot** Defendant Charles Rogers's Motion to Stay Discovery (ECF No. 23 at 15–19).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed June 5, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE